UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LARRY C. WASHINGTON, JR.,

                                 Plaintiff,        Case # 18-CV-396-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

**INTRODUCTION**

On December 22, 2016, Plaintiff Larry C. Washington, Jr., protectively applied for Disability Insurance Benefits under Title II of the Social Security Act due to various impairments. Tr.[1] 84-85, 159-65. After the Social Security Administration ("SSA") denied his claim, Washington testified at a hearing before Administrative Law Judge Sharon Seeley ("the ALJ"). Tr. 29-82. On January 9, 2018, the ALJ issued an unfavorable decision. Tr. 11-25. After the Appeals Council denied his request for review, Washington appealed to this Court.[2] Tr. 1-5; ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 18, 21. For the reasons that follow, the Commissioner's motion is GRANTED and Washington's motion is DENIED.

**LEGAL STANDARD**

When it reviews a final decision of the SSA, it is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 13.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted).

The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## DISCUSSION

In conducting the requisite five-step analysis,[3] the ALJ determined at step two that Washington's post-traumatic stress disorder ("PTSD") was a nonsevere impairment. Tr. 13-16. Washington argues that this requires remand, because his PTSD is a severe impairment and the ALJ should have incorporated related limitations into the residual functional capacity ("RFC") assessment.[4] ECF No. 18-1 at 3-4.

**I.     Step Two Analysis**

At step two of the disability analysis, an ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . and significantly limits the claimant's ability to do basic work activities." *Williams v. Berryhill*, No. 16-CV-00807-LGF, 2018 WL 4501062, at *3 (W.D.N.Y. Sept. 20, 2018) (citations and quotation mark omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521. An impairment is nonsevere if the medical evidence establishes a slight abnormality that would only minimally

---

[3] The ALJ uses this analysis to determine whether a claimant is disabled and therefore entitled to benefits. 20 C.F.R. § 404.1520(a)(4).

[4] A claimant's RFC reflects his ability to perform physical or mental work activities on a sustained basis despite his impairments. *See id.* § 404.1520(e)-(f). The ALJ determines a claimant's RFC between steps three and four of the disability analysis.

affect the claimant's ability to work. *Perez v. Astrue*, 907 F. Supp. 2d 266, 271 (N.D.N.Y. 2012); *see also* SSR 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985).

A. **Relevant Evidence**

Washington went to the Veterans Administration ("VA") emergency room in July 2015 for depression and suicidal ideation coinciding with the anniversary of his mother's death. Tr. 301. He had been "drinking excessively" and using marijuana for several months and reported stressors related to his finances and physical health. *Id.* One week later, he was discharged in good condition and deemed "able to return to his preadmission activities." Tr. 305.

Thereafter, Washington saw psychiatrist Charles Gray, M.D., on July 21, 2015, but then he did not see Dr. Gray again until over one year later on August 30, 2016. Tr. 716. At the August appointment, Dr. Gray made several unremarkable findings, including that Washington was not unpleasant or uncooperative, had normal eye contact and speech, had no psychomotor abnormalities, did not appear anxious, and did not evidence lethality or psychotic symptoms. *Id.*

In December 2015, Washington saw Robert Anderson, M.D., for a compensation and pension evaluation through the VA. Tr. 312-13. Dr. Anderson diagnosed Washington with PTSD and checked a box indicating that he had "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation." Tr. 313-14. Dr. Anderson also indicated that Washington exhibited depressed mood; anxiety; chronic sleep impairment; flattened affect; disturbances of motivation and mood; difficulty establishing and maintaining effective work and social relationships; and impaired impulse control. Tr. 321.

In March 2016, Washington completed a Function Report wherein he indicated that he could go out alone, drove sometimes, shopped in grocery stores, and did not need help or reminders to tend to his personal care or take medication. Tr. 220-21. He also indicated that he did not have trouble getting along with others, including those in authoritative positions, and "loves" spending time with his family and friends, although he does not "trust a lot of people anymore." Tr. 222-23. Washington stated that he could manage his finances, pay attention, and follow oral and written instructions. Tr. 222, 224. Finally, Washington indicated that he sometimes got "depressed" due to stress or changes in his schedule and that he is forgetful. Tr. 225.

B.  The ALJ's Decision

The ALJ summarized and discussed the above evidence at step two in support of her conclusion that Washington's PTSD was nonsevere. Tr. 14-15. She also considered Dr. Anderson's assessment and found it unpersuasive because it was vague and inconsistent with Washington's own report of his mental functioning, both of which were proper reasons to discount his opinion. *See* 20 C.F.R. § 404.1527(c)(3)-(4) (an ALJ will give more weight to an opinion that is well-supported and consistent with the record as a whole). Thus, after considering the relevant evidence and the four broad areas of mental functioning,[5] the ALJ concluded that, "except for a brief exacerbation" of Washington's condition in July 2015, "the evidence is insufficient to establish more than mild limitations" from Washington's alleged disability onset date to his date last insured. Tr. 15. The Court agrees.

---

[5] These areas are known as the "paragraph B" criteria and are set forth in the SSA's regulations for evaluating mental disorders and in Listing 12.00. *See* 20 C.F.R. § 404.1520a(c)(3). Those areas are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* The ALJ found that Washington had mild limitation in the first three areas and no limitation in the fourth area. Tr. 15-16.

As outlined above, except for his one-week hospitalization in July 2015, the record does not indicate that Washington's PTSD is severe enough to affect his ability to work. The presence, diagnosis, and treatment of Washington's PTSD is insufficient to render it severe; rather, an impairment is considered severe based on the functional limitations it imposes. *See Hayes v. Berryhill*, No. 17-CV-6354-FPG, 2018 WL 3069116, at *3 (W.D.N.Y. June 21, 2018) (citations omitted). Washington does not point to any functional limitations that his PTSD imposes; he merely contends, without citing record evidence, that Dr. Anderson's report "certainly presents more than a mild limitation in interaction or concentrating, persisting, or maintaining pace." ECF No. 18-1 at 4. But responses in Washington's Function Report contradict this assertion, including that he could interact with others, manage his finances, pay attention, and follow oral and written instructions.

Accordingly, based on all of the above, the Court finds that the ALJ did not err at step two when she found Washington's PTSD to be a nonsevere impairment.

## II. RFC Determination

Washington also argues that the ALJ erred because she did not consider his PTSD in her RFC analysis, thereby omitting mental limitations from the RFC determination. An ALJ must consider severe and nonsevere impairments—like Washington's PTSD—when assessing a claimant's RFC, and remand is required if the ALJ fails to do so. *See* 20 C.F.R. § 404.1545(a)(2); *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order).

Contrary to Washington's assertion, the Court finds that the ALJ adequately considered his PTSD throughout the RFC analysis and rendered an RFC assessment that is supported by substantial evidence. Specifically, in her step two conclusion, the ALJ indicated that the RFC

assessment "reflects the degree of limitation [she] found" in her analysis of the four areas of mental functioning. Tr. 16.

The ALJ also explicitly acknowledged Washington's mental health and PTSD in the RFC section of her decision. In doing so, she rejected opinions from several state-agency consultants who stated that they had "insufficient evidence to render a decision" as to Washington's mental impairments, because additional evidence acquired at the hearing level was sufficient to evaluate those impairments, which the ALJ reiterated were nonsevere. Tr. 22.

Moreover, the ALJ again acknowledged Dr. Anderson's assessment and gave it only "some weight" because Dr. Anderson applied different standards than those used by the SSA. *Id.*; *see, e.g.*, *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("A determination made by another agency regarding a claimant's disability is not binding on the [SSA]. Nonetheless, it is entitled to some weight and should be considered.") (quotation mark and citations omitted)); *see also Fitzgerald v. Astrue*, No. CIV.A. 2:08-CV-170, 2009 WL 4571762, at *7 (D. Vt. Nov. 30, 2009) (noting that there is "substantial difference between the criteria used in the [VA and the SSA] programs") (citation omitted)). Nevertheless, the ALJ concluded that Dr. Anderson's observation that Washington was "generally functioning satisfactorily, with normal routine behavior, self-care, and conversation" to be consistent with her finding that Washington's mental impairments are nonsevere. Tr. 22.

As demonstrated above, the ALJ clearly considered Washington's PTSD in her RFC analysis and there is no evidence that the RFC assessment should have included additional limitations. Although Washington seems to suggest that the ALJ should have found him capable of only occasional interaction with coworkers and the public, he does not cite record evidence to support that assertion and he admitted in his Function Report that he can get along with others.

6

Accordingly, for all the reasons stated, the Court finds that the ALJ did not err in making the RFC determination.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 21) is GRANTED, Washington's Motion for Judgment on the Pleadings (ECF No. 18) is DENIED, and this matter is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 16, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court